STATE v. GEORGE COPELAND.

*Larceny—Landlord and Tenant.*

1. An indictment for larceny will not lie against a lessee or cropper for secretly appropriating the crop to his own use, even if done with a felonious intent, for the reason, that under the act of 1877, ch. 283, he is in the *actual* possession of the same until a division is made.

2. Where in such case the defendant cropper was hauling seed cotton to the lessor's gin, there was proof that he threw a sack thereof off the wagon by the road-side, and returned to the spot at night and carried the cotton away, which was afterwards found near defendant's house; *Held* that the act of throwing it off the wagon was not an abandon-

ment of his own possession, and the subsequent taking, no trespass upon the possession of the lessor. *Held further*, that if the cotton had been delivered to the lessor at the gin, giving him actual possession thereof, and the defendant had then secretly taken and carried it away, he would have been guilty of larceny. (Review of the landlord and tenant act, rights of parties and remedies thereunder, by ASHE, J.)

INDICTMENT for larceny tried at Fall Term, 1881, of ANSON Superior Court, before *Graves, J.*

It was in evidence on the part of the state that the defendant was cultivating, as a cropper, a part of the land of one Mowery in Anson county.

The defendant was to do the labor and Mowery was to furnish the team and implements, and was to have half of the crop, and defendant was to pay for the supplies furnished him, and gather the crop and haul it on Mowery's wagon and with his team, to his gin house to be divided after it was ginned. At the time of harvesting, the defendant, among other cotton, gathered two bags of seed cotton, which was placed (on the same day it was gathered) on the wagon by the defendant, who also got on the wagon himself; and after going some distance the defendant threw the two bags of cotton off the wagon beside the wagon-way. The act was observed by one of the party, and brought to the attention of a witness who was examined by the state, who watched the cotton until about dark, when he saw the defendant come and take up the two bags and carry them off. After nightfall, Mowery and some three or four others went to the house of the defendant, and arrested him without a warrant. No threats were made or promises to induce him to confess, but he was told he had better tell all he knew about it, and in consequence of what he said, the cotton was found about fifty yards from the defendant's house. There was a verdict of guilty, and the defendant moved for a new trial, assigning error in the charge to the jury. Motion refused, judgment, appeal by defendant.

*Attorney General*, for the State.
*Messrs. Burwell & Walker*, for defendant.

ASHE, J.  Several errors were assigned, but it is needless
to consider any of them except that which alleges error in
the instruction given by His Honor, " that if the defendant
had feloniously taken the cotton from the stalks growing in
the field, and carried it away at the same time, he could not
be convicted under this bill of indictment, but if he picked
the cotton and put it in the sacks or bags and afterwards
put it on the wagon, and then threw it off, and afterwards
the same evening came and feloniously took and carried it
away with the intent to steal it, the last taking would be
larceny and the defendant could be convicted under the bill
of indictment."

There was clearly no error in the first part of the charge,
and whether there was error in the latter part, or second
proposition of the charge, presents the only question in the
case for our determination.  We are relieved from the con-
sideration of the question, whether the defendant bore the
relation of " tenant or cropper " to Mowery, and of the dif-
ferent principles of law applicable to those relations, by the
act of 1876–'77, ch. 283.  By that act it is provided that
where land is leased or cultivated by a cropper, unless oth-
erwise agreed, the crops raised on said land shall be deemed
to be in the possession of the lessor, until all the rents shall
be paid and all the stipulations contained in the lease shall
be performed, &c.; and if any portion of the crop shall be
removed from the land by the tenant or cropper without
the consent of the lessor, he may have his remedy by an
action of claim and delivery.

And it is provided by the second section of said act, that
whenever the lessor or his assigns shall get the *actual* posses-
sion of the crop, or any part thereof, otherwise than by the
mode prescribed in the preceding section (*i. e.* by action of

claim and delivery) and shall refuse or neglect, upon notice of five days, to make a fair division of the crop, the lessee or cropper shall be entitled to the remedy given in the action upon a claim for the delivery of personal property. While the first section of the act declaring that the lessor shall be deemed to be in the possession of the crop, it at the same time, in the second section, recognizes the *actual* possession in the lessee or cropper, until the division, or surrender of the same to the lessor, under the terms of an agreement. The lessor has no right under the act, when there is no agreement to that effect, to take the actual possession from the lessee or cropper, and can never do so, except when he obtains the same by an action of claim and delivery, upon the removal of the crop by the lessee or cropper.

And should he take the possession by any other means, the lessee or cropper may bring an action of claim and delivery against him, and recover the possession or damages, by complying with the requirements of the act.

And by the third section of the act, upon a controversy arising between the parties, and neither of them has availed himself of the provisions of the first and second sections, either of them may proceed to have the matter determined by a justice of the peace, or the superior court of the county, as the one or the other of these tribunals may have jurisdiction ; but it is provided that if the lessee or cropper shall give the bond required by the act, he shall *retain* the possession of the crop. The lessor under this proceeding can only get possession by giving the bond required by the fourth section of the act, upon the failure of the lessee or cropper to give bond.

Notwithstanding the provisions of the first section, the whole tenor of the act contemplates the right of the lessee or cropper to hold the *actual* possession, until such time as a division shall be made.

When the lessee or cropper is thus authorized to hold the

actual possession of the crop against the lessor, can it be, that he is liable to an indictment for larceny for secretly appropriating the crop or any part thereof to his own use, even if done with a felonious intent?

Larceny is the felonious taking and carrying away the personal goods of another, with the intention of appropriating the same to one's own use, or *causa lucri*, without the consent of the owner. To constitute the offence, there must be a *taking* which is as essential an ingredient of the crime as the asportation. "Taking is a material part of larceny, but it may be presumed from the possession of the property." "When there is no trespass in taking the goods, there can be no felony in carrying them away." 2 Wharton Crim. Law, § 1802.

In England it was long doubted whether, as a lodger had a special property in the goods let with the lodgings, the stealing of them was larceny, and it was at length held by a majority of the judges that it was not. This decision was made in the case of *Rex* v. *Moore*, Show., 50, and the ground of the decision was that the lodger and not the landlord had the possession, during the time for which the lodgings were let, and therefore the landlord could not maintain trespass for taking the goods. "Regularly," says Lord Hale, (vol. 1, p. 515), "a man cannot commit felony of goods whenever he hath property. If A and B be joint tenants or tenants in common of an horse, and A takes the horse, possibly *animo furandi*, yet this is not felony, because one tenant in common, taking the whole, doth but what by the law he may do." The reason for this is, that there is in fact no *taking*, for he is already in possession; it is merely the subject of an action of account. Archb. C. L., p. 181.

The same doctrine applies to bailees at common law.

The principle is that felony cannot be committed by a person having a legal possession of goods; as for instance "a watchmaker to whom a watch was given by the owner

for the purpose of having it regulated, disposed of the watch, and applied the proceeds to his own purposes; it was held that this was no larceny, as the watchmaker had in the first instance obtained the possession of the watch rightfully, and as, unless there was a *taking* in the first instance *animo furandi,* no subsequent dealing with the chattel could amount to larceny." 2 Wharton Criminal Law, § 1861, and references in note 31.

To apply these principles to our own case, the defendant as a cropper under Mowery had picked the cotton and put it in sacks; the sacks containing the cotton was placed by him upon the wagon of Mowery to be hauled, according to the agreement, to his gin, where it was to be ginned, and then divided; the defendant at the same time got on the wagon with the cotton, and it was not out of his actual possession until thrown off by him beside the road, which was no abandonment of his possession. His possession was not only rightful and exclusive, but he had an interest in the cotton. The possession of Mowery by virtue of the act of 1876–'7 was at most only constructive. The act of throwing off the cotton cannot be held to be a trespass upon his possession, for he never had an actual possession, or right to the actual possession, until delivered at his gin; so that, there was no *taking* in any legal sense, and as the act of the defendant was wanting in that essential element of the crime of larceny, there was error in the instructions given by the judge to the jury.

If the defendant had delivered the cotton to Mowery at his gin, thereby giving him the *actual* possession thereof, and had then secretly taken and carried it away, there can be no doubt he would have been guilty of larceny, as he would have been upon the facts of this case but for the legislative enactment.

There is error. Let this be certified to the superior court of Anson that a *venire de novo* may be awarded.

Error.                                            *Venire de novo.*